IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND




LIBERTY PROPERTY, L.P. *

Plaintiff,

v. * Civil Action No.: RDB 05-1081

SYNAGRO-WWT, INC., f/k/a/ Wheelabrator Water Technologies, Inc *

Defendant. *

* * * * * * * * * * * *

MEMORANDUM OPINION

This action arises out of a single-count complaint that Plaintiff Liberty Property Limited Partnership, a Pennsylvania company ("Liberty" or "Plaintiff"), filed against Defendant Synagro-WWT, Inc. f/k/a Wheelabrator Water Technologies, Inc., a Maryland company ("Wheelabrator" or "Defendant"). The complaint alleges that Wheelabrator breached its promise to guarantee rent payments that Usinternetworking, Inc. ("Usi") owed Liberty, and requests approximately $1,787,985.50 in resulting damages. Pending before this Court is Wheelabrator's Motion to Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which contends that Liberty's complaint fails to allege a sufficient factual basis for concluding that Wheelabrator promised to guarantee the rent payments at issue. The parties' submissions have been carefully reviewed. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendants' Motion to Dismiss will be GRANTED.

BACKGROUND

The relevant facts construed in Liberty's favor are as follows. Cochrane Drive Holding Associates L.P. ("Cochrane Drive"), as landlord, and Bio Gro Systems, Inc. ("Bio Gro"), as

tenant, entered into an Agreement of Lease dated September 18, 1989 for commercial office space located at 180 Admiral Cochrane Drive, Suites 210 and 305, Annapolis, Maryland (the "Original Lease"). (*See* Compl. Ex .) Notable provisions of the Original Lease provided that the term was five years (*id.* at § 1), amendments were to be in writing (*id.* at § 19.3), the Original Lease was governed by Maryland law (*id.* at § 19.4), and the tenant was entitled to renew the Original Lease for an additional term of five years (*id.* at Rider # 2). Cochrane Drive and Bio Gro entered into a First Amendment to the Agreement to Lease dated April 29, 1993 (the "First Amendment"). (*See* Compl. Ex. 2.) The First Amendment extended the term of the Original Lease to May 31, 2000 (*id.* at § 1(B)) and granted the tenant the option to renew the Original Lease for an additional term of five years (*id.* at § 1(D)).

Ultimately, Liberty became the successor-in-interest to Cochrane Drive and Wheelabrator became the successor-in-interest to Bio Gro.[1] (*See* Compl. ¶ 6.) In 1998, Wheelabrator assigned its interest in the lease to Usi pursuant to an Assignment of Lease dated August 26, 1998. (*See* Compl. ¶ 8 The Assignment of Lease provides

> For value received, Tenant does hereby assign all of Tenant's right, title and interest in and to the [Original Lease] . . . continuing through 11:59 p.m. local time, May 31, 2000 ("the Termination Date") unless sooner terminated pursuant to any provision hereof, unto USinternetworking, Inc. ("Assignee") and, in consideration of Landlord's consent to this assignment, does hereby guarantee the performance by Assignee, Assignee's heirs, successors and assigns of all covenants, agreements and conditions contained in the [Original Lease] . . . on the part of the Tenant or Assignee to be performed.

---

[1] The parties do not explain how or when Liberty became the successor-in-interest to Cochrane Drive or Wheelabrator became the successor-in-interest to Bio Gro. The parties also provide no information regarding Wheelabrator's change in name (from Wheelabrator Water Technologies, Inc. to Synagro-WWT, Inc.). The Court uses the name "Wheelabrator" throughout this Memorandum Opinion because that was the name used by the Defendant when it assigned the lease to Usi.

(Compl. Ex. 3, § Liberty consented to Wheelabrator's assignment of the lease to Usi pursuant to a Consent to Assignment dated September 18, 1998. (*See* Compl. ¶ 10.) The Consent to Assignment provides

> [Landlord,] subject to and specifically conditioned upon the following terms and conditions, hereby grants its consent to the assignment by Tenant, as assignor, to Usinternetworking, Inc. ("Assignee") of Tenant's rights and obligations as Tenant under the Lease (the "Assignment") in consideration of Tenant's and Assignee's acknowledgment and acceptance of the following terms and conditions.

(Compl. Ex. 4.)

Liberty and Usi were the sole parties to the Third Amendment to Agreement of Lease dated June 20, 2000 (the "Third Amendment").[2] (*See* Compl. Ex. 5 The Third Amendment provides:

> Pursuant to [Section 1(D)] of the First Amendment, Tenant hereby exercises its option to renew the Lease (the "Renewal Option") for one additional term of five (5) years and after exercising such Renewal Option, Tenant acknowledges and agrees that Tenant shall have no remaining options to renew the Lease Term. The Lease Term is hereby renewed and extended for an additional five (5) years, commencing on June 1, 2000 and expiring on May 31, 2005.

(*Id.* at § 2.

On January 7, 2002, Usi filed for relief under Chapter 1 of the U.S. Bankruptcy Code. (*See* Compl. ¶ 13 Liberty alleges that "[w]hile in bankruptcy, Usi rejected (*i.e.*, materially breached) the Lease and vacated the Premises on or about April 26, 2002." (*Id.*) Liberty contends that it "notified Wheelabrator that Usi breached the Lease and made several demands

---

[2] The parties cannot locate a second amendment to the Original Lease, which is referenced in the Third Amendment. (*See* Compl. p. 3 n.1.; Opp'n to Mot. to Dismiss, p. 4 n.4.) Wheelabrator does not dispute Liberty's contention that no such amendment exists. (*Id.*)

for payment of the full amount remaining due on the Lease." (*Id.* at ¶ 19.) Finally, Liberty alleges that "Wheelabrator refused the demands, thereby constituting a material breach of its obligations ." (*Id.* at ¶ 20.

On April 21, 2005, Liberty filed its complaint against Wheelabrator in this Court. On June 13, 2005, Wheelabrator filed its Motion to Dismiss.

STANDARD OF REVIEW

Wheelabrator seeks to dismiss Liberty's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325 (4th Cir. 2001). Furthermore, the "Federal Rules of Civil procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint

as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, "[t]he court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papason v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979)." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004). The court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc.*, 213 F.3d at 180.

## DISCUSSION

The precise issue before the Court is whether Liberty can prove any set of facts to support its claim that Wheelabrator breached its promise to guarantee rent payments incurred by Usi *after* May 31, 2000.[3] Liberty contends that two agreements require Wheelabrator to guarantee such payments. First, the Assignment of Lease dated August 26, 1998 requires that Wheelabrator guarantee Usi's performance of all covenants, agreements, and conditions— including Usi's agreement to pay rent—in the Original Lease. Second, in the Third Amendment dated June 20 2000, Usi exercised an option to extend the term of the Original Lease until May 31, 2005 Liberty alleges that by extending the term of the Original Lease, the Third Amendment

---

[3] Wheelabrator promised to guarantee rent payments incurred by Usi between August 26, 1998 and May 31, 2000. Those rent payments, however, are not at issue in this case. (*See* Compl., ¶ 16 ("The amount of remaining rental obligations due to Liberty under the Lease from *2002 through the May 31, 2005* expiration date totals $1,787,985.50.") (emphasis added).)

automatically extended the term of Wheelabrator's promise to guarantee Usi's rent payments. (*See*, *e.g.*, Opp'n to Mot. to Dismiss, p. 2.) In response, Wheelabrator asserts that both its promise to guarantee Usi's rent payments and Usi's option to extend the term of the Original Lease expired on May 31, 2000. Specifically, Wheelabrator contends that it was not a party to the Third Amendment, which was entered into directly by Liberty and Usi on June 20, 2000 Therefore, Wheelabrator contends that it did not guarantee the rental obligations of Usi at issue in this case.

Before considering the relevant contractual language, this Court notes that "Maryland has long adhered to the law of objective interpretation of contracts." *See*, *e.g.*, *Auction Reps. v Ashton*, 731 A.2d 441, 444 (Md. 1999). "Under this principle, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Id.* In this case, the parties agree that the operative agreements are clear and unambiguous. (*See*, *e.g.*, Opp'n to Mot. to Dismiss, p. 12 (referencing "the terms of the controlling and *unambiguous* Lease documents") (emphasis added).) Consequently, "there is no room for construction, and a court must presume that the parties meant what they expressed." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (quoting *GMAC v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985)).

Liberty's breach of contract claim depends entirely on the allegation that Usi exercised its option to extend the term of the Original Lease, which, in turn, extended Wheelabrator's promise to guarantee Usi's rent payments. This allegation is essential to Liberty's breach of contract claim because Wheelabrator was *not* a party to the Third Amendment. As a result, the sole support for Liberty's claim that Wheelabrator violated its contractual obligation to guarantee Usi's rent payments is the allegation that the option exercised by Usi in the Third Amendment extended the

term of the Original Lease, which *automatically* extended Wheelabrator's obligations under two prior agreements, *i.e.*, the First Amendment and Assignment of Lease to which Wheelabrator either was a party or assumed. A brief review of the relevant agreements, however, reveals that there is no basis in law or fact to support Liberty's allegation that Usi effectively exercised its option to extend the term of the Original Lease.[4] As a result, Liberty's breach of contract claim cannot survive Wheelabrator's motion to dismiss.

The First Amendment between Cochrane Drive (the landlord and predecessor-in-interest to Liberty) and Bio Gro (the tenant and predecessor-in-interest to Wheelabrator and Usi) establishes the tenant's option to extend the term of the Original Lease

> The Tenant shall have the option to renew the lease for an additional term of five years.

(Compl. Ex. 2, §1(D). The First Amendment also establishes that this option would terminate with the Original Lease on May 31, 2000:

> The Lease Term will be extended so that the termination date shall become 12:01 a.m. local time on May 31, 2000.

(*Id.* at § 1(B). *Cf. Gressitt v. Anderson*, 51 A.2d 159, 160 (Md. 1947) ("where a lease, with a right of renewal or extension, contains an option to purchase, it will be considered as an indivisible contract and that the option to purchase goes along with the term, unless some contrary intention clearly appears.")

Liberty's complaint fails to proffer any factual basis for concluding that Usi, as tenant,

---

[4] This Court notes that each of the operative agreements in this matter—the Original Lease, First Amendment, Assignment of Lease, and Third Amendment—were attached to Liberty's complaint and relied on by Liberty in bringing this action. *See, e.g.*, *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997) (noting that "documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action" may be considered by a court in the context of a motion brought under Fed. R. Civ. P. 12(b)).

exercised its option to extend the term of the Original Lease before that option expired on May 31, 2000. In fact, Liberty specifically alleges that the option in question was exercised on June 20, 2000, almost three weeks *after* it expired. (*See* Compl. ¶ 12 ("On June 20, 2000, Usi and Liberty entered into a Third Amendment to the [Original Lease] which exercised the renewal option and extended the [Original Lease] through May 31, 2005.") Under these circumstances, Liberty cannot maintain its breach of contract claim. Merely asserting that Wheelabrator was automatically bound by Usi's purported attempt in the Third Amendment to exercise its option to extend the term of the Original Lease is not sufficient without providing some factual basis for concluding that the option was effectively exercised. *Cf. Silberstein v. Epstein*, 126 A. 74, 75 (Md. 1974) (concluding that the new lease is not an extension of the old lease because "[b]etween the expiration of the old lease and the execution of the new one there was an interval of several weeks

Liberty offers two arguments in response. First, Liberty argues that it was "impossible" to exercise the option to renew the term of the Original Lease on or before May 31, 2000 because of contractual provisions that govern the calculation of rent during a renewal period. (*See* Opp'n to Mot. to Dismiss, p. 14.) In particular, Liberty observes that the "Net Component" part of that calculation is "equal to the Net Component in effect during the last lease year increased by a factor equal to 50% of the increase in the Consumer Price Index, as described in Section 3.1(a)(i)(B), over the period between June 1, 1993 and May 31, 2000." (First Amendment, § 1(D).) Liberty argues that it would have been impossible to calculate "Net Component" *on or before* May 31, 2000 because any increase in the Consumer Price Index from the relevant time period would not be published until *after* that date. As a result, Liberty concludes that the parties could not have renewed the term of the Original Lease before May 31, 2000.

This argument fails because the Original Lease provides for the very situation that, according to Liberty, renders a timely renewal of the Original Lease impossible

> if the Consumer Price Index for the calendar month immediately preceding that during which such Lease Year commences, as aforesaid, *has not been published by the date on which the first installment of the Base Rent accrues for such Lease Year, then until such Consumer Price Index is published for such calendar month, the Tenant shall pay* on account of the Net Component of each installment of the Base Rent falling due during such Lease Year before such Consumer Price Index is published, as aforesaid, *an amount equaling the installment of the Net Component which accrued for the calendar month immediately preceding that during which such Lease Year commenced*, and shall thereafter pay to the Landlord, promptly upon written demand by the Landlord after such Consumer Price Index is so published, the amount, if any, by which the installments of the Base Rent for such Lease Year, when calculated by reference to such published Consumer Price Index, exceeds the aggregate amount of such installments theretofore paid during such Lease Year . . .

(Compl. Ex. 1, § 3.1(a)(i)(B)(a) (emphasis added); *see also* Comp. Ex. 2, § 2 (where First Amendment states that "[e]xcept as is hereinabove set forth, the provisions of the [Original Lease] shall remain in full force and effect, as if this Amendment had not been entered into."); Compl. Ex. 5, § 8 (where Third Amendment provides that the parties "hereby acknowledge and reaffirm their intention to be bound by the terms and conditions of the [Original Lease, as amended].").)

Liberty's second argument is that a recital to the Third Amendment suggests that the parties agreed to extend the Original Lease *before* memorializing that agreement on June 20, 2000. The recital that forms the basis of this argument reads:

> WHEREAS, the parties have *agreed* to amend the Lease and to extend its term . . .

(Compl. Ex. 5. (emphasis added).) This argument fails for two reasons. First, even if this Court

assumes that the parties agreed to extend the Original Lease before June 20, 2000, that allegation provides no factual basis for concluding that Usi exercised its option to renew before May 31, 2000 (when that option expired). Second, any agreement by the parties made prior to June 20, 2000 that was not set forth in writing is unenforceable as a matter of law because it would violate the Maryland Statute of Frauds and the terms of the Original Lease. *See* Md. Code Ann., [Com. Law] § 2A-201(1)(B) ("A lease contract is not enforceable by way of action or defense unless . [t]here is a writing signed by the party against whom enforcement is sought or by that party's authorized agent. . ."). (*See also* Compl. Ex. 1, § 19.3 ("This Lease may be amended by and only by an instrument executed and delivered by each party hereto.").)[5]

In sum, even after accepting as true all allegations in Liberty's complaint, this Court finds that Liberty cannot prove a set of facts that would render Wheelabrator liable for rent payments incurred by Usi after May 31, 2000. Accordingly, Liberty's complaint is dismissed because it fails to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. A separate Order follows.

Dated: December 30, 2005

/s/ [signature]
Richard D. Bennett
United States District Judge

---

[5] This Court also notes that the allegation made by Liberty in its responsive papers (Usi exercised its option *before* June 20, 2000) contradicts a similar allegation made by Liberty in its complaint (Usi exercised its option *on* June 20, 2000). (*See* Compl. ¶ 12.)